**Robert William ROEDER, III,
Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 10A01–9709–CR–322.**

Court of Appeals of Indiana.

May 22, 1998.

Jeffrey D. Stonebraker, Jeffersonville, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, and Janet Brown Mallett, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Robert Roeder ("Roeder") appeals the trial court's decision not to enforce an oral plea agreement after Roeder allegedly relied on the agreement to his detriment. We affirm.

### Issue

Roeder raises one issue on appeal which we restate as whether the trial court properly refused to enforce an oral plea agreement notwithstanding the fact that, in reliance on said agreement, Roeder voluntarily returned to the jurisdiction to face the misdemeanor charges pending against him.

### Facts

The facts most favorable to the judgment indicate that on November 2, 1995, the State filed an information charging Roeder with Battery, a class A misdemeanor,[1] and Invasion of Privacy, a class B misdemeanor.[2] (R.

---

1. IND.CODE § 35–42–2–1.

2. IND.CODE § 35–46–1–15.1(a)(2).

3, S.R. 3). These charges were based on a domestic violence incident which occurred between Roeder and his former spouse, Portlan (Roeder) Logsdon ("Logsdon"). Sometime after the information was filed, Roeder was incarcerated in Louisville, Kentucky. (S.R. 7). While incarcerated, an Indiana deputy prosecutor contacted Roeder to discuss a plea agreement regarding the charges pending against him in Indiana. (S.R. 7). Roeder and the deputy prosecutor eventually agreed that upon the resolution of Roeder's situation in Louisville, Roeder would return to Indiana and enter a plea of guilty to the charge of Battery, a class A misdemeanor, whereupon the State would recommend a one-year sentence, with three months executed time and nine months suspended. (S.R. 7).

Roeder subsequently returned to Indiana in accordance with the terms of the plea agreement and on April 28, 1996, he personally appeared before the court. However, on the same day, the prosecutor received a phone call from Logsdon who expressed her dissatisfaction with the plea agreement. (S.R. 7). After the deputy prosecutor expressed these concerns to the trial court during the hearing on April 28th, the matter was rescheduled for May 1, 1997, so that Logsdon could be present. (S.R. 5).[3]

A bench trial was held on May 30, 1997. At the commencement of the proceedings, Roeder objected to continuing with trial, stating that he had fulfilled his obligation under the plea agreement and therefore the State should also be bound by the agreement. (S.R. 13). The trial court responded to Roeder's objection as follows:

> Okay. Let me, for the purposes of the record and, and so the Defendant is aware, a Plea Agreement between the parties is not automatically approved by the Court, something the Court has to review. . . . So the matter before the Court is still the Bench Trial on the Information as filed by the State and we'll proceed.

**3.** The record reveals that there was a subsequent hearing on May 1, 1997. The parties disagree and the record is unclear as to whether the State withdrew its plea agreement at that time or

(R. 13–14). The trial court subsequently found Roeder guilty on both counts of the Information and sentenced him to a one-year executed sentence.

### Discussion and Decision

*Standard of Review*

▪ Initially, we note that when reviewing a trial court's decision to accept or reject a plea agreement, we use an abuse of discretion standard. *Badger v. State*, 637 N.E.2d 800, 803 (Ind.1994). Thus, reversal is appropriate only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997).

▪ A criminal defendant has no constitutional right to engage in plea bargaining. *Coker v. State*, 499 N.E.2d 1135, 1138 (Ind. 1986). Thus, a prosecutor is under no duty to plea bargain at all, or to keep an offer open, as the offer remains within the discretion of the prosecutor. *Id.* Likewise, a prosecutor has the absolute authority to withdraw a plea agreement before it has been reduced to writing and submitted to the court. *Petty v. State*, 532 N.E.2d 610, 613 (Ind.1989). Offer and acceptance of an agreement by the parties do not alone compel acceptance of the agreement by the trial court; otherwise there would be no need for the trial court to accept or reject an agreement submitted to it under IND.CODE § 35–35–3–3. *Badger*, 637 N.E.2d at 803. Even an immediate acceptance of the original offer by a defendant does not create a right to have that bargain specifically enforced until it is embodied in a judgment of a court. *Coker*, 499 N.E.2d at 1138. However, our supreme court has held that "courts must enforce agreements between the prosecution and a defendant . . . either if the State has materially benefitted from the terms of the agreement or if the defendant has relied on the terms of the agreement to his substantial detriment." *Badger*, 637 N.E.2d at 804.

whether the trial court rejected the plea agreement. The resolution of this discrepancy, however, does not affect our decision.

In resolving the question of whether the agreement in this case warrants equitable enforcement, we are mindful of the paramount need to preserve the integrity and credibility of the criminal justice system while safeguarding a tool valuable to the administration of justice: pre-trial disposition of criminal charges by negotiation between the state and the accused. Although not looked upon favorably at common law, the development of this component of the criminal justice system has facilitated the essential conservation of limited judicial and prosecutorial resources. It should therefore be encouraged, provided that it is properly administered.

*Bowers v. State,* 500 N.E.2d 203, 204 (Ind. 1986). Further, the promise of a state official in his public capacity is a pledge of the public faith and is not to be lightly disregarded. *Id.* The public justifiably expects the State, above all others, to keep its bond. *Id.*

### Plea Agreement

Roeder argues that under the facts and circumstances of the case at bar he was entitled to specific performance of the oral plea agreement he made with the deputy prosecutor. Specifically, he asserts that in reliance upon the agreement, he acted to his detriment by voluntarily returning to Indiana to face the charges pending against him.

We find, as the Indiana Supreme Court did in *Petty,* that the circumstances in the present case do not support an enforcement of the plea agreement based upon a detrimental reliance theory. There, Petty "gave up" his place in a Kentucky facility to be transported to Indiana for trial. After the State withdrew its plea agreement, Petty alleged, *inter alia,* that in waiving all extradition proceedings, he detrimentally relied on the plea agreement and consequently was entitled to enforcement of the agreement. In rejecting Petty's claim of detrimental reliance, our supreme court stated, "Obviously, Petty would have been transported eventually whether he agreed or not." *Petty,* 532 N.E.2d at 610.

4. Likewise, Roeder's voluntary return to Indiana, while undoubtedly convenient to the State, can-

 In the present case, Roeder's allegation of detrimental reliance is based solely on his voluntary return to Indiana. However, similar to *Petty,* the record demonstrates that Roeder need not have performed his end of the bargain for the State to have achieved the same result pursuant to the Uniform Criminal Extradition Act. *See* IND.CODE § 35-33-10-3. Thus, the evidence does not support Roeder's claim of detrimental reliance.[4] Accordingly, we find no error.

Affirmed.

NAJAM and RILEY, JJ., concur.

not be deemed a material benefit conferred on the State under the present circumstances.