### Daniel E. WEBSTER, Appellant–Defendant,

### v.

### STATE of Indiana, Appellee–Plaintiff.

### No. 25A03–9807–CR–330.

Court of Appeals of Indiana.

March 31, 1999.

Transfer Denied June 3, 1999.

---

C. Richard Oren, Rochester, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Sarah E. Scherrer, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant Daniel E. Webster ("Webster") appeals from his convictions for Burglary as a Class B felony, Residential Entry as a Class D felony, and Battery as a Class A misdemeanor.

### Issues

Webster presents three issues for our review which we rephrase as follows:

(1) whether the trial court properly exercised its discretion in rejecting Webster's guilty pleas for residential entry and battery because of an insufficient factual basis;

(2) whether the State presented sufficient evidence to sustain Webster's conviction for burglary; and

(3) whether the trial court properly merged Webster's conviction of the lesser included offense of residential entry with the conviction and sentence of the greater offense of burglary.

### Facts and Procedural History

The facts most favorable to the verdict indicate that Webster and Teresa Mathias ("Teresa") met a few days before her marriage to Manford Mathias on June 17, 1994. Teresa and Webster's relationship consisted of occasionally drinking alcohol together. On July 29, 1997, at approximately 6:30 a.m., Webster arrived at Teresa's mobile home at 2253 West 45 North, Rochester, Indiana. During his visit, Teresa and Webster consumed several beers. Around 9:00 a.m., Teresa and Webster drove to a local tavern in Leiters Ford, Indiana, to buy more beer and some vodka. Because the tavern in Leiters Ford had not yet opened, Webster and Teresa decided to drive to a liquor store in Argos, Indiana, to purchase the beer and vodka. After they bought the alcohol in Argos, Webster and Teresa went to the home

of Kevin Coleman, a mutual friend, to feed and look after his dogs. Webster then drove Teresa back to her home, dropped her off, and left. Teresa cleaned her home and then took a nap.

Later that afternoon, Webster returned to Teresa's home and stacked two cinder blocks beneath a screened window. Webster then stood upon the blocks, cut through the screen with his keys, opened the window, and entered Teresa's home. After Webster entered the house, he removed his clothing, went into Teresa's bedroom, and crawled naked into her bed. When Teresa awoke and discovered Webster naked in her bed, she immediately jumped out of her bed and ran into another room crying for assistance; Webster followed. Webster struck Teresa twice in the face with his fist, chipping one of her teeth. Webster then ripped Teresa's shirt, shorts and underwear off her body. Teresa ran naked from her home into the garage of Judy Swank ("Swank"), her neighbor, and hid underneath a table in Swank's garage. Swank covered Teresa with a blanket and asked her what had happened. Teresa informed Swank that Webster had attempted to rape her. Swank then called the police to report the attempted rape; Teresa remained under the table until the police arrived. While the women waited for the police, Webster drove past Swank's home, told Swank that he had not tried to rape Teresa, and drove off.

On November 18, 1997, the State charged Webster with burglary (with rape as the underlying felony), residential entry, and battery. On December 2, 1997, an initial hearing was held where the trial court entered a preliminary plea of not guilty on Webster's behalf. On February 25, 1998, a change-of-plea hearing was conducted where Webster withdrew his plea of not guilty for residential entry and battery and entered guilty pleas pursuant to a plea agreement. In exchange, the State agreed to dismiss the burglary charge. However, the plea agreement was silent as to the sentence to be imposed by the trial court for the guilty pleas.

At the guilty plea hearing, the trial court informed Webster of the nature of the charges against him and the statutes upon

which the charges were based. The trial court also informed Webster that he could receive a sentence which included a fine ranging from $1.00 to $15,000.00 and up to four years in prison. The trial court then asked Webster to summarize the events that occurred in the early afternoon of July 29, 1997. Webster testified that Teresa had locked herself out of her home and that he had cut the screen window to let her inside. The trial court informed Webster that to be guilty of residential entry he could not have had Teresa's consent to enter her home. The trial court then asked Webster if he entered Teresa's home with her consent to help her get inside; he answered affirmatively. The trial court then refused to accept the plea agreement, finding an insufficient factual basis to support the residential entry charge because Webster did not admit to any criminal activity. The trial court then set this matter for trial. Webster and the State waived their right to a jury trial, requesting a bench trial.

On March 3, 1998, Webster was found guilty of burglary, residential entry, and battery. Webster was sentenced to a term of 18 years' imprisonment for burglary, with three (3) years suspended; he was also sentenced to one (1) year of imprisonment for battery, with the sentences to be served concurrently. The residential entry conviction was merged with the burglary conviction as a lesser included offense; therefore, the trial court did not sentence Webster for this conviction.

### Decision and Discussion

#### I. Plea Agreement

Webster asserts that the trial court abused its discretion in rejecting his guilty pleas for residential entry and battery by failing to find the existence of an adequate factual basis. Indiana has long recognized that the criminally accused may forgo a trial before a trier of fact and plead guilty. *Har-*

*ris v. State*, 671 N.E.2d 864, 866 (Ind.Ct.App. 1996), *trans. denied.* When a defendant pleads guilty, he waives certain constitutional rights; therefore, "a trial court has a duty to evaluate the validity of every plea before accepting it." *Butler v. State*, 658 N.E.2d 72, 75 (Ind.1995). IND. CODE § 35-35-1-3 requires a court to ascertain the voluntariness of the plea and whether there is a factual basis for it.[1] *Id.* The finding of a factual basis is a subjective determination that permits a trial court wide discretion due to the varying degrees and kinds of inquiries required by different circumstances. *Id.* at 76. "A factual basis exists when there is evidence about the elements of the crime from which a trial court could reasonably conclude that the defendant is guilty." *Id.* at 77.

Because a trial court exercises its discretion in accepting or rejecting a plea agreement, this Court reviews claims of error under an abuse of discretion standard. *Roeder v. State*, 696 N.E.2d 62, 64 (Ind.Ct. App.1998). A reversal is appropriate only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In deciding whether the trial court abused its discretion in rejecting Webster's plea, we are required to examine the inquiry undertaken at the time and the facts established as a result thereof. *See Butler*, 658 N.E.2d at 77.

Webster entered into a plea agreement in which he agreed to plead guilty to residential entry and battery, and the State agreed to dismiss the burglary charge. *See* IND. CODE § 35-35-3-1. At the guilty plea hearing, the trial court asked Webster to summarize the events that purportedly took place in the early afternoon of July 29, 1997. Webster testified that Teresa had locked herself out of her home and that he had cut the screen window to enter her home to unlock the door. Webster stated that he believed

---

1. IND. CODE § 35-35-1-3 provides in pertinent part:
    (a) The court shall not accept a plea of guilty or guilty but mentally ill at the time of the crime without first determining that the plea is voluntary. The court shall determine whether any promises, force, or threats were used to obtain the plea.

    (b) The court shall not enter judgment upon a plea of guilty or guilty but mentally ill at the time of the crime unless it is satisfied from its examination of the defendant or the evidence presented that there is a factual basis for the plea.

that he had Teresa's consent to enter her home to unlock the door.

■ In order to plead guilty to residential entry, Webster had to admit that he knowingly or intentionally broke and entered Teresa's dwelling. IND. CODE § 35–43–2–1.5. A defendant's reasonable belief that he had permission of the dwelling's owner to enter is a defense to the charge of residential entry. *McKinney v. State*, 653 N.E.2d 115, 118 (Ind.Ct.App.1995). Webster raised the defense *sua sponte* when he stated that he had entered Teresa's home with her consent. The trial court recognized that Webster's summary of the facts, if true, provided a viable defense to the residential entry charge and rendered his guilty plea untenable. In fact, Webster's version of events amounted to a claim of innocence.

In *North Carolina v. Alford*, the United States Supreme Court addressed the question of whether a trial court could accept a guilty plea accompanied by protestations of innocence. *Harris*, 671 N.E.2d at 868, *citing* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In *Alford*, a defendant entered a guilty plea for murder because he faced the possibility of the death penalty if he did not. *Id.* The Supreme Court held that the fact that a criminally accused maintains his innocence should not be a bar to his entering and the court accepting a guilty plea. *Id.* at 868, *citing Alford*, 400 U.S. at 37–39, 91 S.Ct. at 167–168, 27 L.Ed.2d at 171–172. The Supreme Court said:

> Thus, while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of [a] criminal penalty. An individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime. Whether he [defendant] realized or disbelieved his guilt, he insisted on his plea because in his view he had absolutely nothing to gain by a trial and much to gain by pleading. Because of the overwhelming evidence against him, a trial was precisely what neither [Defendant] nor his attorney

desired. Confronted with the choice between a trial for first-degree murder, on the one hand, and a plea of guilty to second-degree murder, on the other, [Defendant] quite reasonably chose the latter and thereby limited the maximum penalty to a 30–year term.

> In view of the strong factual basis for the plea demonstrated by the State and [Defendant's] clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting [the plea agreement].

*Ross v. State*, 456 N.E.2d 420, 422 (Ind.1983), *citing Alford*, 400 U.S. at 37–39, 91 S.Ct. at 167–168, 27 L.Ed.2d at 171–172. However, the Supreme Court stated that its holding did not prohibit individual states from barring their courts from accepting guilty pleas from any defendants who assert their innocence. *Harris*, 671 N.E.2d at 868, *citing Alford*, 400 U.S. at 38, n. 11, 91 S.Ct. at 168, n. 11, 27 L.Ed.2d at 172, n. 11. For many years, Indiana has declined to accept a guilty plea where a defendant contemporaneously maintains his innocence. *Harris*, 671 N.E.2d at 868. *See Harshman v. State*, 232 Ind. 618, 621, 115 N.E.2d 501, 502 (1953), wherein our supreme court stated:

> [a]s we view it, a plea of guilty tendered by one who in the same breath protests his innocence, or declares he actually does not know whether or not he is guilty, is no plea at all. Certainly it is not a sufficient plea upon which to base a judgment of conviction. No plea of guilty should be accepted when it appears to be doubtful whether it is being intelligently and understandably made, or when it appears that, for any reason, the plea is wholly inconsistent with the realities of the situation.

*See also Trueblood v. State*, 587 N.E.2d 105, 107 (Ind.1992), *cert. denied*, 506 U.S. 897, 113 S.Ct. 278, 121 L.Ed.2d 205 (1992) (a trial judge commits reversible error if he accepts a plea of guilty when the defendant both pleads guilty and maintains his innocence at the same time); *Ross v. State*, 456 N.E.2d 420, 423 (Ind.1983) (a judge may not accept a plea of guilty when the defendant both pleads guilty and maintains his innocence at the

same time; to accept such a plea constitutes reversible error).

■ Here, Webster tendered a guilty plea to the charge of residential entry. Residential entry requires knowingly or intentionally breaking and entering the dwelling of another. IND. CODE § 35–43–2–1.5. However, instead of admitting that he entered Teresa's home without her authorization, he testified that he had Teresa's consent, which essentially amounted to a claim of innocence. Webster stated, "[b]ut I went in [the house] through the window, so technically to me that's residential entry, you know and I did slap her." However, when the trial court asked Webster if Teresa consented to his assistance, he stated that "I thought it was with her consent[.]" Although Webster was pleading guilty, he was also claiming that he was innocent. Therefore, the trial court did not abuse its discretion when it rejected Webster's guilty plea based on an insufficient factual basis.

## II. Sufficiency of the Evidence

■ Webster contends that the evidence presented by the State was insufficient to sustain his conviction for burglary because it failed to establish that he intended to commit a felony, namely rape, when he broke and entered Teresa's mobile home. The sufficiency of evidence necessary to sustain a conviction is governed by a well-settled standard and scope of review. This Court neither reweighs the evidence nor determines the credibility of the witnesses. *Smith v. State,* 678 N.E.2d 1152, 1155 (Ind.Ct.App. 1997), *trans. denied.* Instead, we look to the evidence most favorable to the verdict, together with all reasonable inferences to be drawn therefrom. *Id.* The conviction will be affirmed if evidence of probative value exists from which a trier of fact could find the defendant guilty beyond a reasonable doubt. *Jordan v. State,* 656 N.E.2d 816, 817 (Ind. 1995).

### A. Burglary

■ A conviction for burglary requires proof that a defendant broke and entered a building or structure of another person with the intent to commit a felony therein. IND.

CODE § 35–43–2–1. "Although evidence of breaking and entering *alone* cannot serve as a basis from which to infer the intent to commit the underlying felony which has been charged, our supreme court has long observed that intent may be inferred from circumstantial evidence of the nature of the felony." *Sumner v. State,* 540 N.E.2d 1253, 1254 (Ind.Ct.App.1989), *trans. denied* (1990) (emphasis in original). The evidence does not need to be insurmountable, but it must provide a solid basis to support a reasonable inference that the defendant intended to commit the underlying felony. *Cash v. State,* 557 N.E.2d 1023, 1024 (Ind.1990). The requisite intent to commit a felony typically can be inferred from the subsequent conduct of the individual inside the premises or by the manner in which the crime was committed. *Smith v. State,* 671 N.E.2d 910, 912–913 (Ind. Ct.App.1996).

■ Here, Webster stacked two cinder blocks on top of one another so that he could reach a screened window. Webster then cut a hole through the screen, opened Teresa's window, and entered her home. Teresa was asleep in her bedroom when Webster entered. He then removed his clothing and crawled naked into Teresa's bed. When Teresa awoke and discovered Webster naked in her bed, she immediately jumped up and ran into another room calling for help. Webster followed and hit her several times in the face with his fist. He then ripped her shirt off her body. As Teresa ran from him, Webster ripped her shorts and underwear off her body. From this sequence of events, the trial court could have reasonably inferred that Webster entered Teresa's home with the intent to commit rape. *See Henley v. State,* 519 N.E.2d 525, 527 (Ind.1988) (sufficient evidence of defendant's intent to commit rape where he entered the dwelling, shoved the victim onto the floor, and started undressing her).

### III. Conviction and Sentence for both Burglary and Residential Entry

We address a third issue *sua sponte.* Webster was convicted of both burglary and residential entry. Although the trial court entered a judgment of conviction upon both

offenses, it merged the residential entry count with the burglary count, sentencing Webster only on the burglary count. In its sentencing order, the trial court stated:

> [u]pon Count I[,] the Court sentences the defendant upon the Class B felony of Burglary to a term of eighteen (18) years to the Department of Corrections and the costs of the action. The Court finds that Count II [residential entry as a Class D felony] is merged as an included offense in Count I and that no separate finding in Count II is appropriate.

■■■■■ A defendant may be *charged and tried* with greater and lesser included offenses under the same indictment or information. *Redman v. State*, 679 N.E.2d 927, 929 (Ind.Ct.App.1997), *trans. denied* (emphasis added). Because a trial court often enters judgments of convictions upon both the lesser included and greater offense, it will either sentence a defendant only upon one of the offenses or "merge" the two convictions.[2] *Id.* However, a defendant may not be *convicted and sentenced* upon the lesser included offense when a sentence is also imposed upon the greater offense. *Mason v. State*, 532 N.E.2d 1169, 1172 (Ind.1989), *cert. denied*, 490 U.S. 1049, 109 S.Ct. 1960, 104 L.Ed.2d 428 (emphasis added). "Where the conviction of a greater crime cannot be had without conviction of the lesser crime, the double jeopardy clause bars separate conviction and sentencing on the lesser crime when sentencing is imposed on the greater one." *Id.* Therefore, where a defendant is found guilty of both the greater offense and the lesser included offense, the trial court's proper procedure is to vacate the conviction for the lesser included offense and enter a judgment of conviction and sentence only upon the greater offense. *Id.*

*Mason* dealt with convictions and sentences for both lesser included and greater offenses that were merged with the greater offense. *Id.* at 1171. Here, however, while convicting Webster for both offenses, the trial court did not enter a sentence upon the lesser included count, but sentenced him only upon the greater count. This Court addressed the issue of whether a defendant may be convicted of a lesser included offense that is merged with the conviction and sentence of the greater offense in *Redman v. State*, 679 N.E.2d 927, 932. In *Redman*, the defendant was convicted of both aggravated battery and attempted murder; however, the trial court merged the aggravated battery count with the attempted murder count and only imposed a sentence for the attempted murder count. *Id.* at 927. We held that merging the two offenses was inappropriate and ordered the trial court on remand to vacate the conviction upon the lesser included offense of aggravated battery. *Id.* at 932.

Also, in *Abron v. State*, 591 N.E.2d 634 (Ind.Ct.App.1992), *trans. denied*, the defendant was convicted of both possession of cocaine and dealing in cocaine; however, the trial court only sentenced the defendant upon the dealing count. *Id.* at 636. We determined that a conviction of the lesser included possession offense even without a sentence was in violation of double jeopardy and remanded the case with instructions to vacate the possession conviction. *Id.* at 636–637.

■■■■ As defined by statute, residential entry is committed by "[a] person who knowingly or intentionally breaks and enters the dwelling of another person[.]" IND. CODE § 35–43–2–1.5. Residential entry is an inherently lesser included offense of burglary, which allows a felony prosecution for a housebreak without the need for proof of the intent to commit a target crime. *Vincent v. State*, 639 N.E.2d 315, 317 (Ind.Ct.App.1994). It is impossible to commit burglary without committing residential entry. The trial court's decision to merge the residential entry count with the burglary count was inappropriate. Therefore, we remand this cause to the trial court with an order to vacate Webster's conviction of the lesser included offense of residential entry and enter a judg-

---

**2.** "The term 'merger' is often used to describe the determination to forego sentencing with regard to an included offense in light of a conviction upon a greater offense. It may also be used to indicate that one conviction must be vacated as subsumed within another conviction. However, use of a 'merger' solution in a particular instance may not avoid double jeopardy prohibitions." *Redman v. State*, 679 N.E.2d 927, 929, n. 2.

ment of conviction and sentence only upon the greater offense of burglary.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed with respect to the issues of the plea agreement and the sufficiency of the evidence. The judgments upon the burglary and battery charges are affirmed. However, we reverse in part, remanding this cause to the trial court with instructions to vacate Webster's conviction for residential entry.

The decision of the trial court is affirmed in part, reversed in part, and remanded with instructions.

STATON and RILEY, JJ., concur.