**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 14 2012, 9:33 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Frischkorn Law LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DELANEY WRIGHT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1106-CR-562 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Rudolph Pyle III, Judge
Cause No. 48C01-1008-FD-295

**February 14, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Delaney Wright appeals his conviction for Residential Entry,[1] a class D felony. More particularly, Wright argues that he was denied a fair trial when the State was granted a short recess during the defense's cross-examination of one of the State's witnesses to interview that witness outside the courtroom. Additionally, Wright argues that the evidence was insufficient to convict him, inasmuch as the State failed to prove that he broke into the residence and he reasonably believed that he had permission to be in the residence. Concluding that Wright was not denied a fair trial and the evidence to be sufficient, we affirm the decision of the trial court.

### FACTS

Mercedes Kerr and Wright were involved in a romantic relationship that began in January 2010 and ended on Easter 2010, when Wright began seeing Samantha Parkhurst. However, Wright and Kerr met a few times after that to engage in sexual relations.

At some point, Kerr and Wright obtained restraining orders against each other that were in effect on August 17, 2010. During the evening of August 17, 2010, Wright called Kerr approximately ten or twelve times, telling her that he knew where she lived and that he was coming over. Kerr told Wright not to come to her residence.

Sometime that night, Kerr heard the back door being kicked in. She grabbed her two-month-old son and pressed the talk button on her telephone, knowing that it would automatically redial the last person to whom she had talked. The light then came on and Kerr saw Wright standing naked in her bedroom. The phone had redialed Evan

---

[1] Ind. Code § 35-43-2-1.5.

2

Rawlings, and Kerr said, "Help me. I need help." Tr. p. 13. Wright then approached Kerr's bed and asked her who was on the phone, to which she replied, "[s]omebody to come help me." Id. at 14. Wright had both of his legs around Kerr's body, and she was kicking him with the baby in her arm.

Rawlings and Gary Lockridge then entered the residence while Kerr was kicking Wright. Rawlings and Lockridge grabbed Wright, and Kerr left the room to call 911. Kerr heard the sounds of an altercation from the bedroom, and Wright ran naked from the apartment but returned to the building later, asking a neighbor for his clothes. Kerr threw the clothes down from the balcony.

Anderson Police Officers Douglas Rolfe and John Garret were dispatched to the scene. Officer Garret interviewed Kerr, and both officers saw the freshly damaged back door. On an otherwise clean floor, by the door, were pieces of wood. After Garret took Kerr's information, dispatch informed him that Wright was at a nearby Starbucks Coffee, wanting to file a theft and battery report.

Officer Garret went to the Starbucks to meet Wright, who told him that he had been in the area of Thirty-Eighth and Scatterfield and that "he was jumped, beaten and robbed by Mercedes Kerr." Tr. p. 58. When Officer Garret informed Wright that he had just spoken to Kerr, Wright changed his story, stating that "it sounded like Mercedes." Id. Officer Garret transported Wright back to Kerr's apartment where Kerr identified him. Officer Garret transported Wright to jail.

3

On August 18, 2010, the State charged Wright with residential entry, a class D felony. Wright's bench trial commenced on April 26, 2011. During cross-examination of Kerr, the following occurred:

Q: Did you tell [Wright] that you lied to the police on that phone call?

A: Yes, I did.

MR. GILLEY: And, your Honor, I'm gonna object to this. I think it was a phone call that [was] recorded that was never discovered for the State. At this point, we need to have that discovered. Um, we want to have access to, . . .

Judge: Approach.

**(BENCH CONFERENCE)**

MR. GILLEY: Your Honor, (Inaudible response) the State, that I get what she has and I get what she is referencing. Um, I don't believe that we try a trial by surprise. . . . that was part of my motion in limine prior to the starting was, I get to hear it before we use it and I haven't been discovered that tape or have I been able to hear that tape.

JUDGE: Is this the phone call that he was talking about [?]

MRS. WARNER SIMS: And at this point, I don't plan to introduce because she is admitting that she's, the only reason I would use it would be from an impeachment standpoint. . . . She's admitted that she made some of those statements.

MR. GILLEY: Your Honor, I think the rule of completeness would say that we have to listen to the entire tape.

MRS. WARNER SIMS: There's [sic] is not evidence, I haven't even introduced the, . . .

MR. GILLEY: But, but we've introduced part of it by questions.

JUDGE: Have you, has the defense made you aware of this phone call?

4

MR. GILLEY:  Made me aware of it by the fact that it exists, yes.  Made me aware of it as far as what's on it, not at all in any way.

*** 

JUDGE:  Okay, I got the, I got the, . . . Um, it's cross-examination, she is allowed to ask her whether or not these statements had been made.  She did let the State know that there's, the basis for her questions.  The problem comes if she attempts to introduce the phone call, ah, but I'm gonna allow her to at least ask the questions as to whether or not she made these statements um, to the police.  If, in the meantime, before we go any further, you want to interview your witness, . . .

MR. GILLEY:  I would Judge, I would.

JUDGE:  . . . to talk about, . . .

MR. GILLEY:  Because this is completely new.

JUDGE:  Then I'll let you do that.  We'll take a break, you can interview her and then I'll let you continue your cross-examination, that's fine.

Tr. p. 34-38.

The trial court took a short recess to allow the State to interview Kerr outside the presence of the trial court.  When the trial court reconvened, the defense was permitted to resume cross-examination but stated that there were no further questions.  On redirect, the following colloquy occurred:

Q:  What did you think the question was that was being asked of you?

A:  Did I lie to [Wright].  I, I did not hear nothing about, did I tell [Wright] that I lied to the police.  I didn't hear that part.

Q:  Okay.  And, when you heard the question that you thought you were being asked, "Did you lie to [Wright]? Didn't you lie to [Wright]?"

5

A:  Yes, I did a lot.  Yes, I did lie to [Wright].  That's what I did.

Q:  And, why did you lie to [Wright]?

A:  Because him, or, not him, sorry, his girlfriend, Samantha, said that if I said it one (1) time, then they would give me anything I wanted, and basically everything that I wanted if I said it one (1) time.  So, I did even though I knew I was going to come here and tell the truth about everything.

Q:  Okay.  Would you ever lie to a law enforcement officer?

A:  No.

Q:  Okay.  Ah, that night, when law enforcement came out, did you tell them the truth?

A:  Yes, I did.

Id. at 42-43.

At the conclusion of the bench trial, the trial court found Wright guilty as charged. That same day, the trial court held a sentencing hearing and sentenced Wright to 720 days of incarceration at the Department of Correction (DOC), followed by 180 days at the Madison County Work Release Center.  On May 12, 2011, the DOC asked for clarification, and the trial court amended the sentencing order to 900 days, including 720 executed in the DOC and 180 days suspended to work release.  Wright now appeals.

DISCUSSION AND DECISION

I. Denial of Fair Trial

Wright argues that the trial court committed fundamental error when it permitted the State to interview its witness outside the courtroom during cross-examination. Wright acknowledges that, at trial, he failed to contemporaneously object to the trial

6

court's decision to allow the State to interview Kerr and has, consequently, waived the issue for appellate review. Nevertheless, Wright highlights that reversal is warranted if the error is fundamental, which is an exception to the waiver doctrine. Benson v. State, 762 N.E.2d 748, 755 (Ind. 2002).

The fundamental error exception is extremely narrow. Jewell v. State, 887 N.E.2d 939, 942 (Ind. 2008). Fundamental error is error that represents a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. Davis v. State, 835 N.E.2d 1102, 1107 (Ind. Ct. App. 2005). The error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. Id. In determining whether a claimed error denies the defendant a fair trial, appellate courts consider whether the resulting harm or potential for harm is substantial. Id. The element of harm is not shown by the fact that the defendant was ultimately convicted, but rather, depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. Id. at 1107-08.

Here, as indicated by the dialogue between the attorneys and the trial court, the recorded conversation had not been given to the State during discovery. Additionally, the State was surprised by Kerr's answer given when asked about the recorded conversation, namely, that Kerr had told Wright that she had lied to law enforcement about the events surrounding the night in question. Although the trial court agreed that the defense had the right to ask Kerr whether she made certain statements and acknowledged that the

7

defense had made the State aware of the general basis for these questions, because the State had not been given the tape and there would be an issue if the defense introduced the tape into evidence, the trial court decided to grant the State a short recess to interview its witness outside the courtroom regarding the contents of the recorded conversation. When the State was finished interviewing Kerr, the defense declined the opportunity to resume cross-examination. On redirect, Kerr clarified that she had been truthful to law enforcement officials, but had lied to Wright. Under these facts and circumstances, we cannot say that the trial court committed fundamental error. Indeed, we cannot even say that the trial court acted unreasonably under the circumstances, and Wright was not denied a fair trial on this basis.

## II. Sufficiency of the Evidence

Wright argues that the evidence was insufficient to convict him of residential entry. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). Rather, we will consider only the probative evidence and the reasonable inferences drawn from that evidence that support the verdict. Id. If there is substantial evidence of probative value supporting the conviction, it will not be set aside. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003).

Indiana Code section 35-43-2-1.5 states that "[a] person who knowingly or intentionally breaks and enters the dwelling of another person commits residential entry, a Class D felony." Wright claims that the "evidence does not support the trial court's

8

determination that Mr. Wright broke into Ms. Kerr's apartment." Appellant's Br. p. 4. Additionally, Wright contends that he had Kerr's consent to be in her apartment.

As for Wright's argument that the evidence failed to show that he broke into Kerr's apartment, Kerr testified that on August 17, 2010, Wright called her approximately ten to twelve times, telling her that he knew where she lived and that he was coming over, but she told him not to do so. Tr. p. 10. Sometime that night, Kerr heard her backdoor being kicked in; the light was turned on, and Kerr saw Wright naked in her bedroom. Id. at 11-12.

Officer Garret testified that when he went to the residence, he saw damage to the back door that was very recent. Tr. p. 53-55. Officer Douglas Rolfe also testified that the damage to the back door appeared to be very recent. Id. at 72-73. Officer Rolfe based his opinion on the facts that "there was some pieces laying on the floor from the frame being damaged," that the wood was not weathered, and the floor was otherwise clean. Id. at 71-74. Although Wright highlights evidence that a refrigerator had to be moved away from the back door by Officer Garret, it is unclear how the refrigerator came to be in front of the back door. However, Kerr testified that the police told her to put the refrigerator there and not to use the door anymore. Tr. p. 44. In any event, Wright's emphasis on this fact is merely a request that we reweigh the evidence, which we will not do. And in light of the testimony discussed above, we cannot say that the evidence was insufficient to show that Wright broke into Kerr's apartment.

Regarding Wright's argument that Kerr gave her consent for him to be in her apartment, we initially observe that a defendant's reasonable belief that he had permission of the dwelling's occupant to enter is a defense to a charge of residential entry. Webster v. State, 708 N.E.2d 610, 614 (Ind. Ct. App. 1999). Here, Kerr testified that during Wright's numerous telephone calls to her, she repeatedly told him not to come to her residence. Tr. p. 10. Later that night, Kerr heard the back door being kicked in, and Wright entered her bedroom naked. Under these facts and circumstances, we cannot say that the trial court erred by not crediting Wright's defense, and we affirm the decision of the trial court.

The judgment of the trial court is affirmed.

DARDEN, J., and BAILEY, J., concur.