Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**MICHAEL W. REED**
Reed & Earhart P.C.
Warsaw, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT LEE PICKENS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 43A03-1112-CR-585 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE KOSCIUSKO CIRCUIT COURT
The Honorable Rex L. Reed, Judge
Cause No. 43C01-1102-FB-98

**September 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Robert Lee Pickens ("Pickens") was convicted after a jury trial of dealing in methamphetamine[1] as a Class B felony and was adjudicated a habitual offender.[2] He was sentenced to fifteen years for his Class B felony conviction enhanced by fifteen years for his habitual offender adjudication for a total sentence of thirty years. Pickens appeals, raising the following, restated issues:

I.     Whether the trial court abused its discretion when it refused to permit Pickens to plead guilty the day before his scheduled jury trial; and

II.    Whether his thirty-year sentence was inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On February 13, 2011, Pickens contacted Dallas Deckys ("Deckys"), a confidential informant for the Kosciusko County Drug Task Force, by phone and told her that he had just finished manufacturing methamphetamine and wanted to sell her some. He informed Deckys he had one gram for sale and that the cost was $80. Deckys contacted Officer Paul Heaton ("Officer Heaton") of the Warsaw Police Department to tell him about the call she received from Pickens, and Officer Heaton advised Deckys to make the drug buy. Later that day, Deckys met with Officer Heaton and Sergeant Don McCune ("Sergeant McCune") of the Kosciusko County Sheriff's Department in the parking lot of the Lake City Bank in Warsaw, Indiana. The officers searched Deckys and

---

[1] See Ind. Code § 35-48-4-1.1.

[2] See Ind. Code § 35-50-2-8.

her minivan for illegal drugs and placed a recording transmitter in Deckys's purse. The officers gave Deckys two fifty-dollar bills, from which they had previously recorded the serial numbers, to use to purchase the drugs. The officers then followed Deckys to a gas station in Leesburg, Indiana, where she had arranged to meet Pickens.

When Deckys arrived at the gas station, Pickens was standing outside of a maroon vehicle. Pickens got inside of Deckys's minivan and handed her the methamphetamine in a clear plastic bag; Deckys then gave him the two fifty-dollar bills. Deckys asked Pickens how much the methamphetamine weighed, and he responded that it weighed one gram. After hearing the drug transaction over the recording transmitter, the officers moved in and arrested Pickens. During the arrest, the officers recovered one of the fifty-dollar bills on the ground next to Pickens and the other one in Pickens's front pants pocket. The serial numbers on these fifty-dollar bills matched the bills provided to Deckys prior to the drug transaction. Deckys gave the officers the plastic bag containing the drugs, and it field-tested positive for methamphetamine. Later testing revealed that the bag contained methamphetamine weighing .52 grams.

The State charged Pickens with dealing in methamphetamine as a Class B felony and possession of methamphetamine as a Class D felony and filed a separate information alleging an habitual offender enhancement. Prior to trial, the State dismissed the Class D felony possession of methamphetamine charge. On the day before Pickens's jury trial, the State and Pickens tendered a proposed plea agreement, pursuant to which Pickens would plead guilty to Class B felony dealing in methamphetamine and receive a six-year executed sentence. During the plea hearing, Pickens expressed hesitancy about his plea,

dissatisfaction with his attorney's representation, indicated that he agreed to the plea after learning that day about a tape of the drug transaction, and denied any involvement in the crime. *Tr*. 3, 5, 7-8. After questioning Pickens, the trial court rejected the proposed plea agreement, and Pickens proceeded to jury trial the next day. At the conclusion of the two-day jury trial, Pickens was found guilty of Class B felony dealing in methamphetamine, and Pickens admitted to being an habitual offender. The trial court sentenced him to fifteen years for the Class B felony dealing in methamphetamine, enhanced by fifteen years for the habitual offender adjudication, resulting in an aggregate sentence of thirty years. Pickens now appeals.

## DISCUSSION AND DECISION

### I. Refusal of Plea Agreement

A defendant has no absolute right to have a guilty plea accepted, and a trial court may reject a plea in the exercise of sound judicial discretion. *Beeks v. State*, 839 N.E.2d 1271, 1273 (Ind. Ct. App. 2005) (citing *Snyder v. State,* 500 N.E.2d 154, 157 (Ind. 1986)), *trans. denied*. "Indeed, a trial court has discretion in deciding whether to accept a guilty plea, and we will reverse the trial court's decision only when it has abused that discretion." *Id*. at 1274 (citing *Webster v. State,* 708 N.E.2d 610, 613 (Ind. Ct. App. 1999), *trans. denied*). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Jennings v. State*, 723 N.E.2d 970, 972 (Ind. Ct. App. 2000), *trans. denied*.

Pickens argues that the trial court abused its discretion when it rejected his proposed plea agreement. He specifically contends that the trial court arbitrarily made

4

this decision without reason and did not establish any legitimate basis for refusing to accept the proposed plea agreement. Pickens further asserts that, although the trial court stated it was concerned about Pickens's dissatisfaction with his defense attorney, Pickens had maintained his desire to plead guilty. He also alleges that the trial court failed to tentatively accept and agree to consider the proposed plea agreement as required by accepted practice and applicable statutes. He therefore claims that the trial court's arbitrary refusal to consider the proposed plea constituted an abuse of discretion.

Initially, Pickens's argument that the trial court abused its discretion because it did not "tentatively accept and agree to consider [the plea agreement] as required by accepted practice and applicable statutes" fails because the trial court has discretion in whether or not to accept or reject a plea agreement. *Beeks*, 839 N.E.2d at 1274. Pickens's next argument, which is that the trial court failed to establish a legitimate basis for rejecting the proposed plea agreement, also fails because the trial court is not required to state a reason on the record when it rejects a plea agreement. "The absence of specific reasons for rejection [of a plea agreement] does not evidence, in Indiana, abuse of discretion." *Meadows v. State*, 428 N.E.2d 1232, 1235 (Ind. 1981) (holding that when trial court, after complying with guilty plea statutes, and after taking evidence on factual basis for plea, rejects plea bargain, we will presume that court has properly evaluated propriety of accepting it).

In the present case, the record reflects the basis for rejection of the plea agreement. When questioned by the trial court, Pickens expressed hesitancy about the plea agreement, indicated that he entered into the plea agreement because he learned about

5

incriminating evidence earlier the same day, and denied any involvement in the crime. *Tr*. at 3, 7-8. The record shows that, instead of arbitrarily rejecting Pickens's plea agreement, the trial court engaged in the following discussion with Pickens, during which Pickens expressed hesitancy about pleading guilty:

Trial Court: Mr. Pickens, just a few moments ago, I received a proposed Plea Agreement by the terms of which it would appear to me that you may wish to withdraw a previously entered plea of not guilty to the offense of Dealing in Methamphetamine in an Amount Less Than Three (3) Grams, a Class B felony, as charged in Count I in this case and you propose to enter a plea of guilty to that charge under the terms of this Plea Agreement. Is that true, Mr. Pickens?

Pickens: Yes.

Trial Court: That's a fairly reluctant yes. Is that your desire or not, Mr. Pickens?

Pickens: Yes.

Trial Court: It is. Have you discussed doing this with your Counsel . . .?

Pickens: Vaguely.

Trial Court: Well, do you need more time? Do you want more time with [defense counsel] to –

Pickens: I mean, I ask him questions, he don't [sic] answer me.

Trial Court: Pardon me?

Pickens: I've asked him questions over and over but he doesn't answer me.

*Id*. at 2-3. The trial court then asked Pickens if he needed more time to discuss his questions with his attorney, and Pickens declined the opportunity and stated that, although he had discussed the case with his attorney, he had not had enough time to do

6

so. *Id*. at 3-5. After further discussion about whether Pickens would like more time to talk with his attorney about the case, Pickens told the trial court that he was not satisfied with the manner in which his attorney had represented him. *Id*. at 7. The trial court then engaged in the following exchange with Pickens:

Trial Court: . . . First of all, let the court ask you, what is it that you are not satisfied with [your defense attorney] about in the fashion in which he has represented you. What is it, Mr. Pickens, that is troubling you, if anything?

Pickens: I was arrested on the 13th of February and this whole time that I've been sitting here in this jail -- there was no tape of no [sic] drug transaction.

Trial Court: I do not need to know that.

Pickens: I'm explaining to you. All of a sudden tomorrow is my trial date for a two-day trial. All of a sudden, I get called out this morning -- listen to this. And you hear some whispering on there, (defendant making whispering noises) and then you hear somebody say, half gram, which isn't me.

Trial Court: Mr. Pickens, it seems to me like those are matters that the Court probably ought to not hear. So, I believe, that probably it would be appropriate then for this Court to not go forward at this time. I don't want you to plead guilty if that's not your desire, if you're not, if you're dissatisfied in some fashion or other with your representation. So let's, we'll just call the proceedings to a halt.

*Id*. at 7-8.

Even though the trial court mentioned Pickens's dissatisfaction with his defense attorney as a reason for rejecting his proposed plea agreement, Pickens's comments demonstrate that he was only entering into the plea agreement because he was confronted by evidence that he clearly disputed. Further, his denial of his involvement in the crime

7

likely meant that he would have difficulty establishing a sufficient factual basis for the guilty plea. *See D.A. v. State*, 967 N.E.2d 59, 63 (Ind. Ct. App. 2012) (citing Ind. Code § 35-35-1-3) ("A court may not accept a guilty plea unless the court determines that a sufficient factual basis exists to support the plea."). Therefore, based on Pickens's statements and the thoughtful discussion in which the trial court engaged with him, we conclude that the trial court did not abuse its discretion in rejecting Pickens's proposed plea agreement.

## II. Inappropriate Sentence

Pickens argues that his aggregate thirty-year sentence was inappropriate in light of the nature of the offense and the character of the offender. "This court has authority to revise a sentence 'if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender.'" *Spitler v. State,* 908 N.E.2d 694, 696 (Ind. Ct. App. 2009) (quoting Ind. Appellate Rule 7(B)), *trans. denied.* Although Indiana Appellate Rule 7(B) does not require us to be extremely deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Delao v. State*, 940 N.E.2d 849, 852-53 (Ind. Ct. App. 2011) (citing *Patterson v. State,* 909 N.E.2d 1058, 1062–63 (Ind. Ct. App. 2009)), *trans. denied*. We understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* at 853. The defendant bears the burden of persuading this court that his sentence is inappropriate. *Id.*

Initially, we note that it would be within our discretion to find that Pickens has waived his inappropriateness argument by failing to make a cogent argument. *See* Ind.

8

Appellate Rule 46(A)(8)(a). Pickens's argument in support of finding his sentence to be inappropriate focuses only on the nature of his offense, by arguing that he only sold a small amount of methamphetamine to Deckys as a result of his relationship with her. "But revision of a sentence under Indiana Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of *both* the nature of his offenses and his character." *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008). Pickens does not raise any cogent argument as to the inappropriateness of his sentence in light of his character.

Waiver notwithstanding, we conclude that Pickens's thirty-year sentence was not inappropriate. Although the circumstances of Pickens's offense were unremarkable, his character demonstrates that the sentence given was appropriate. Pickens has an extensive adult criminal history that included nine felony convictions, several misdemeanor convictions, and two prior habitual offender enhancements. His first encounter with law enforcement was at the age of nine, and he was placed in the Indiana Boys School at the age of fifteen. He has been given several opportunities in the past for both parole and probation, which have been previously revoked, and he was on parole and probation at the time he committed the current offense. Pickens has not met his burden of persuading this court that his sentence was inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

NAJAM, J., and MAY, J., concur.