**Ricky SPIVEY, Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

No. 49A02–8903–CR–96.

Court of Appeals of Indiana,
Second District.

April 30, 1990.

addition to his obligations under Paragraph 4.18."
Record at 204.

Kenneth T. Roberts, Roberts & Bishop, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Judge.

### CASE SUMMARY

Defendant-appellant Ricky Spivey (Spivey) appeals from his conviction for murder,[1] claiming that the trial court erred when it failed to dismiss the murder charge in accordance with a plea agreement, and that the trial court erroneously allowed a witness to give opinion testimony.

We affirm.

1. Ind.Code 35–42–1–1 (1988).

## FACTS

The facts most favorable to the trial court's judgment reveal that on the morning of October 6, 1986, Spivey and Gregory Dickerson (Dickerson) confronted the victim, Leroy Hollis (Hollis), the manager of a restaurant where Dickerson was formerly employed. Dickerson was wearing a ski mask while Spivey's face was uncovered. The two forced Hollis at gunpoint, to open the restaurant safe and give Spivey and Dickerson its contents.

During the robbery, Spivey informed Dickerson that Hollis had recognized him, and Spivey gave Dickerson his handgun. The two men had previously agreed that, if Hollis recognized Dickerson, Hollis would be shot. Dickerson fired two shots into Hollis, killing him. The two men then fled the restaurant.

Spivey was apprehended and charged with murder, and robbery,[2] a class A felony. On October 15, 1986, the same day he was charged, Spivey entered into an agreement with the State whereby the State agreed to forego prosecution on the murder charge if Spivey agreed to plead guilty to the robbery charge. Spivey was also required to give a truthful statement, in all respects, regarding the robbery and murder, and he was to cooperate and assist the police in the ongoing investigation. The next day, Spivey made a statement to the State in which he indicated he had not known Dickerson was going to shoot Hollis, and that he told Dickerson not to shoot Hollis.

After Dickerson was apprehended, Spivey made a subsequent statement which disclosed the true facts of the robbery, i.e., that Spivey and Dickerson had agreed to kill Hollis if he recognized Dickerson, that Spivey had suggested that Dickerson must shoot Hollis, and that he had given Dickerson his gun. The State, considering the plea agreement void, proceeded against Spivey on both the murder and robbery charges.

After a bench trial, on June 26, 1987, Spivey was found guilty on both counts.

The trial court merged the convictions and sentenced Spivey to a forty-year term of imprisonment.

## ISSUES

1. Whether the trial court erred when it failed to specifically enforce Spivey's plea agreement with the State?
2. Whether the trial court erred when it allowed a witness to give an opinion?

## DECISION

*ISSUE ONE*—Did the trial court err when it failed to dismiss Spivey's murder charge in accordance with Spivey's plea agreement?

*PARTIES' CONTENTIONS*—Spivey argues that the State was bound to fulfill its plea agreement, which called for the dismissal of the murder charge, and therefore the trial court should have granted his motion to dismiss. In the alternative, Spivey argues that the court should have granted his motion to suppress Dickerson's testimony, because his testimony was the product of Spivey's cooperation with police in their investigation. The State responds that Spivey violated the plea agreement by failing to truthfully disclose everything he knew about the murder and robbery, and therefore the State was not obligated to perform the terms of the agreement. The State also asserts that, because the plea agreement with Spivey was void, there was no basis to suppress Dickerson's testimony.

*CONCLUSION*—The trial court properly denied Spivey's motion to dismiss and motion to suppress.

It is true that the promise of a state official in his public capacity is a pledge of the public faith and is not to be lightly disregarded, *Bowers v. State* (1986), Ind., 500 N.E.2d 203, but this court has also recognized that to permit a defendant to enter a plea bargain binding on the court and thereafter retain the benefit of the bargain, while relieving himself of his burden, would operate as a fraud upon the court. *Moyer v. State* (1978), 177 Ind.App. 461, 379 N.E.2d 1036.

**2.** IC 35–42–5–1 (1988).

While Indiana courts have not considered the precise situation before us, federal courts have routinely dealt with similar factual circumstances. In Indiana, as in the federal courts, the principles of contract law can provide guidance in the consideration of plea agreements. *Bowers, supra.* In *U.S. v. Reardon* (10th Cir.1986), 787 F.2d 512, the court considered a plea agreement which provided that the defendant was to give a full and truthful accounting and statement of all knowledge the defendant possessed concerning the trafficking of controlled substances. In his disclosures to the government, the defendant informed the FBI that he was not involved in any other drug transactions. Subsequently, the FBI learned that the defendant had participated in numerous other transactions which he had failed to disclose. After being confronted, the defendant acknowledged his involvement in the additional transactions. The court ruled that plea bargains, like contracts, cannot normally be unilaterally broken with impunity or without consequence. The court then decided that, because the defendant had failed to provide the government with a full and truthful accounting of his activities, the trial court did not err in allowing the government to revoke the plea agreement. *Reardon, supra.*

In *U.S. v. Baldacchino* (1st Cir.1985), 762 F.2d 170, the court considered a defendant's claim that the government breached its plea agreement when it indicted him. The court concluded that the government had properly indicted the defendant because the defendant's statement to the government to fully and honestly cooperate with the government, was "not near the truth." *Id.* at 179.

Spivey's plea agreement with the State provided Spivey agreed to "[g]ive a truthful statement, in all respects, to the police regarding the robbery and murder of Leroy Hollis on October 6, 1986." *Record* at 45. The agreement also provided that: "Specifically, *if the Defendant shows deception* on questions relating to: ... (B) whether he is telling us the truth about all he knows about the events surrounding the robbery-murder at issue here; *then this agreement*

*is void."* *Record* at 46 (emphasis supplied).

■ That Spivey was required to truthfully reveal the details of the murder was unmistakenly a requirement of Spivey's plea agreement.

In Spivey's first statement, made the day after the plea agreement was executed, he stated that he told Dickerson not to shoot Hollis, that Dickerson took the handgun from him, and that he did not know Dickerson intended to shoot Hollis. *Supplemental Record* at 31, Exhibit C at 66–70, 82. A calculated deception.

These statements were entirely false, as Spivey later admitted, i.e., that he told Dickerson Hollis had recognized him, suggested that Dickerson shoot Hollis, and gave Dickerson his gun. *Supplemental Record* at 36, Exhibit H at 10. Thus, the plea agreement was void and the State was no longer required to abide by it. *Reardon, supra; Baldacchino, supra.*

■ Spivey next argues that because he made voluntary statements to the police in accordance with the plea agreement, the State should have been prohibited from offering Dickerson's testimony at trial because it was the product of the plea agreement. As the plea agreement was properly voided, there was no basis to suppress Dickerson's testimony. That Spivey was not entirely dishonest in his dealings with the State does not render inadmissible evidence which might have been gleaned from those portions of his statements that contained a kernel of truth. The trial court properly allowed Dickerson to testify.

*ISSUE TWO*—Did the trial court err when it allowed Dickerson to respond to a question?

*PARTIES' CONTENTIONS*—Spivey claims that a question asked of Dickerson during his direct examination called for a conclusion by Dickerson and that his objection was improperly overruled. The State replies that the question asked Dickerson to relate specific facts within his knowledge, and did not require Dickerson to reach a conclusion.

*CONCLUSION*—The trial court properly overruled Spivey's objection.

 It is well-established that opinions are not properly permitted to be given in testimony in instances where the jurors are as well qualified to form an opinion upon the facts as the witness. *Reburn v. State* (1981), Ind., 421 N.E.2d 604.

Spivey objects to the following exchange between the State and Dickerson:

"Q. Did Mr. Spivey whisper anything else to you at that time?

A. Not was [sic] far as I can remember.

Q. It was just, I think he recognizes us, or something that effect?

A. Well, one time he, he did say, uh, you know what we gotta do, just like that.

Q. And he said that to you?

A. Yeah.

Q. And had the two (2) of you talked about this potential situation before you went into the Dooley O'Toole's?

A. Yeah.

Q. Okay. And what was your understanding as, as to, uh, what you had to do at that time?

A. We would ...

*MR. HAWKINS:* Objection, Judge.

A. ... shoot him.

*MR. HAWKINS:* Asks for a conclusion.

*THE COURT:* No. Overruled.

Q. I'm sorry, what—what was your answer?

A. We would shoot him.

Q. That you would shoot him?

A. Yeah.

Q. All right. Did you and Mr. Spivey have any agreement as to who would do the shooting?

A. No.

Q. Okay. Now, when Mr. Spivey said this to you, where were you located in the Dooley O'Toole's?

A. Still standin' right there by the front door, in front of the office door."

*Record* at 237–38.

 Contrary to Spivey's claims, the question did not require Dickerson to make a conclusion. Instead, the question merely put into context Spivey and Dickerson's agreement that Hollis would be shot if he recognized Dickerson. As Dickerson had previously testified, Spivey and he agreed to shoot Hollis if he recognized Dickerson, *record* at 232, the question posed to Dickerson merely required him to repeat that testimony and relate facts specifically within his knowledge.

Therefore, the trial court did not err when it overruled Spivey's objection, and Dickerson's response was properly admitted. *See Wagner v. State* (1985), Ind., 474 N.E.2d 476.

Judgment affirmed.

SHIELDS, P.J., concurs.

CHEZEM, P.J., concurs in result.