# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JEFFREY T. ARNOLD**
Richmond, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

FILED
Oct 02 2014, 8:58 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

ROBERT CAMPBELL, )
)
    Appellant-Defendant, )
)
        vs. )    No. 89A04-1312-CR-634
)
STATE OF INDIANA, )
)
    Appellee-Plaintiff. )

APPEAL FROM THE WAYNE SUPERIOR COURT
The Honorable Charles K. Todd, Jr., Judge
Cause No. 89D01-1203-MR-5

**October 2, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Robert Campbell (Campbell), brings an interlocutory appeal of the trial court's Order granting the State's Motion to Withdraw from Plea Agreement.

We affirm.

## ISSUE

Campbell raises one issue on interlocutory appeal, which we restate as follows: Whether the trial court abused its discretion by granting the State's Motion to Withdraw from Plea Agreement.

## FACTS AND PROCEDURAL HISTORY

On March 20, 2012, police officers discovered the deceased body of Mike Sekse (Sekse) inside a shed in Richmond, Wayne County, Indiana. Five males, including eighteen-year-old Campbell, were subsequently arrested in connection with Sekse's death. On March 28, 2012, the State filed an Information charging Campbell with one Count of murder, Ind. Code § 35-42-1-1; one Count of felony murder, I.C. § 35-42-1-1(2); two Counts of robbery resulting in serious bodily injury, Class A felonies, I.C. § 35-42-5-1(1); one Count of robbery while armed with a deadly weapon, a Class B felony, I.C. § 35-42-5-1(1); two Counts of conspiracy to commit robbery resulting in serious bodily injury, Class A felonies, I.C. §§ 35-42-5-1(1), 35-41-5-2; and two Counts of conspiracy to commit robbery while armed with a deadly weapon, Class B felonies, I.C. §§ 35-42-5-1(1), 35-41-5-2. On May 9, 2012, pursuant to Indiana Code section 35-50-2-9, the State filed an Information seeking to sentence Campbell to life imprisonment without parole.

On May 16, 2013, Campbell and the State entered into a Plea Agreement, in which Campbell agreed to plead guilty to Count I, murder. In exchange for Campbell's acknowledgment that he intentionally killed Sekse during the commission of a robbery, the State agreed to dismiss the eight other charges. The Plea Agreement provided that the trial court would have the discretion to determine Campbell's sentence, including the possibility of life imprisonment without parole. As part of the deal, Campbell "agree[d] to voluntarily and completely testify at any proceeding regarding the facts of this offense or other offenses originally charged, including the role of any co-defendant." (Appellant's App. p. 313).

At a hearing on May 22, 2013, Campbell withdrew his initial plea of not guilty and pled guilty to the sole Count of murder. On May 28, 2013, the trial court accepted the Plea Agreement and entered a judgment of conviction for murder. A bifurcated sentencing hearing was scheduled to begin on October 23, 2013.

On September 11, 2013, the State filed a Motion to Withdraw from Plea Agreement. In its Motion to Withdraw, the State asserted that Campbell had "refused to honor" the terms of the Plea Agreement. (Appellant's App. p. 342). Specifically, during the trial of one of Campbell's co-defendants, Campbell refused to testify. Because Campbell had been granted derivative and use immunity, the trial court subsequently found Campbell to be in direct criminal contempt of court and sentenced him to two-and-one-half years of incarceration.[1] As a result of Campbell's breach of the Plea Agreement, the State requested

---

[1] Campbell appealed his two-and-one-half-year sentence for contempt. In a memorandum decision, this court remanded the case to the trial court with instructions to reduce Campbell's sentence to a term of six

that the trial court vacate its judgment of conviction and permit the State to withdraw from the Plea Agreement. On September 26, 2013, the trial court conducted a hearing on the State's Motion to Withdraw. During the hearing, Campbell stipulated to the fact that he had breached the terms of the Plea Agreement. However, Campbell argued that, notwithstanding his breach, the State still received some benefit by virtue of the Plea Agreement and, therefore, should remain bound by its terms.

On October 10, 2013, the trial court issued an Order granting the State's Motion to Withdraw from Plea Agreement. By refusing to testify at his co-defendant's trial, the trial court found that Campbell had breached a provision "of substance" and was not entitled to receive the benefit of being sentenced in accordance with the Plea Agreement. (Appellant's App. p. 471). Accordingly, the trial court vacated Campbell's judgment of conviction and ordered the case to proceed to trial as originally charged.

On October 29, 2013, Campbell petitioned the trial court to certify its Order for interlocutory appeal. The trial court granted Campbell's request on November 27, 2013. On February 3, 2014, our court accepted jurisdiction. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Campbell claims that the trial court abused its discretion by permitting the State to withdraw from the Plea Agreement. It is long settled "that plea agreements are in the nature of contracts entered into between the defendant and the State." *Lee v. State*, 816 N.E.2d

---

months or less because anything greater would require a determination of guilt by a jury. *See Campbell v. State*, No. 89A04-1309-CR-490, slip op. at 4-5 (Ind. Ct. App. May 9, 2014).

35, 38 (Ind. 2004). Both the defendant and the State "bargain for and receive substantial benefits from the agreement." *Wright v. State*, 700 N.E.2d 1153, 1155 (Ind. Ct. App. 1998). A trial court has discretion to either accept or reject a proposed plea agreement, and once the trial court has accepted the plea agreement, the "court is bound by all the terms in the plea agreement which are within its legal power to control." I.C. § 35-35-3-3(e); *Reffett v. State*, 571 N.E.2d 1227, 1229-30 (Ind. 1991). In general, the trial court may not revoke its acceptance of a plea agreement. *Reffett*, 571 N.E.2d at 1230.

Campbell, the State, and the trial court are in agreement that Indiana courts have not yet decided this precise situation. Thus, Campbell relies on firmly established case law that holds the State may only withdraw from a plea agreement *prior* to the trial court's acceptance, as long as the defendant has not relied to his detriment on the plea agreement and the State has not materially benefitted from the deal. *See Mendoza v. State*, 869 N.E.2d 546, 552 (Ind. Ct. App. 2007), *trans. denied*. Because the trial court had already accepted the Plea Agreement and entered a judgment of conviction at the time of the breach, Campbell contends that the trial court had no authority to rescind the Plea Agreement. Rather, Campbell maintains that the trial court was obligated to enforce the Plea Agreement by imposing a sentence in accordance with its terms. We disagree.

Because a plea agreement is an explicit contract between the State and a defendant, we look to the principles of contract law for guidance. *Griffin v. State*, 756 N.E.2d 572, 574 (Ind. Ct. App. 2001), *trans. denied*. We interpret plea agreements with the primary goal of giving effect to the parties' intent. *Wright*, 700 N.E.2d at 1155. Terms that are clear and unambiguous are conclusive of this intent; as such, the reviewing court must

5

apply the contractual provisions without construing the contract or considering extrinsic evidence. *Id.* Ambiguity will be found in a contract only where reasonable people would find it "subject to more than one construction." *Id.*

In this case, the language of the Plea Agreement unequivocally requires Campbell to "voluntarily and completely testify at any proceeding" concerning the robbery and murder of Sekse. (Appellant's App. p. 313). It is undisputed that Campbell refused to testify when called upon by the State at his co-defendant's trial. While the Plea Agreement explicitly provides that if Campbell appeals either his judgment or sentence, the deal will be considered repudiated and the State may reinstate all nine charges, it does not include any such specific remedy for his refusal to testify. *See, e.g.*, *Spivey v. State*, 553 N.E.2d 508, 510 (Ind. Ct. App. 1990) (finding plea agreement was void based on defendant's refusal to provide truthful information where provision specified that defendant's deception would annul the deal). Nevertheless, we must presume that the parties included each provision in the Plea Agreement for a purpose. *Ind. Gaming Co. v. Blevins*, 724 N.E.2d 274, 278-79 (Ind. Ct. App. 2000), *trans. denied*. We find that the provision obligating Campbell to testify in his co-defendants' trials would be rendered meaningless if Campbell could unilaterally break the Plea Agreement after acceptance by the trial court and still receive the same benefits as if he had fully performed.

Consideration—*i.e.,* "a 'bargained for exchange' whereby the promisor accrues a benefit or the promisee accepts a detriment"—is an essential element of every contract. *Kelly v. Levandoski*, 825 N.E.2d 850, 860 (Ind. Ct. App. 2005), *trans. denied*. It is clear that Campbell "receive[d] the full benefit of his bargain" when the State dismissed eight

6

charges. *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013). Despite his breach, Campbell contends that "the State did receive a benefit by [his] testimony at his plea hearing[,]" which provided the State with "a valuable benefit (*sic*) about other co-defendants." (Appellant's Br. p. 7). Notwithstanding the lack of evidence in the record to support this assertion, we find that by refusing to testify at his co-defendant's trial, Campbell failed to tender the consideration specifically contemplated in the Plea Agreement. *Griffin*, 756 N.E.2d at 575. Thus, we agree with the trial court that it would deprive the State of its end of the bargain to sentence Campbell in accordance with a contract that he did not fully satisfy. Moreover, as it was Campbell—not the State—who breached the Plea Agreement, we find little merit in Campbell's argument that the State's real motive for withdrawing was due to its realization that it had "made a bad deal" after Campbell's co-defendant received a ninety-year sentence. (Appellant's Br. p. 8).

In addition, our courts have emphasized that due process concerns require that criminal defendants have adequate safeguards during plea negotiations. *Epperson v. State*, 530 N.E.2d 743, 745 (Ind. Ct. App. 1988). Although a defendant does not have a constitutional right to receive a plea bargain, if the State does make a promise to a defendant, which promise constitutes part of the inducement or consideration for executing a plea agreement, any subsequent breach by the State renders the defendant's guilty plea involuntary. *Lineberry v. State*, 747 N.E.2d 1151, 1156 (Ind. Ct. App. 2001); *Roeder v. State*, 696 N.E.2d 62, 64 (Ind. Ct. App. 1998). Because the State cannot be "permitted to violate plea agreements without impunity," a defendant may be entitled to one of several remedies, including specific performance or withdrawal of the guilty plea. *Epperson*, 530

N.E.2d at 745. *See* I.C. § 35-35-1-4(b) (permitting defendant to withdraw from guilty plea at any point prior to sentencing "for any fair and just reason").

While a defendant's breach of a plea agreement does not give rise to the same due process concerns that permit a defendant's withdrawal from a plea deal that the State has breached, our court has recognized "that to permit a defendant to enter a plea bargain binding on the court and thereafter retain the benefit of the bargain, while relieving himself of his burden, would operate as a fraud upon the court." *Spivey*, 553 N.E.2d at 509. Furthermore, public policy considerations support the determination that the State should have the same opportunities as a defendant to seek redress in the event of a defendant's breach of a plea agreement. Plea agreements are a valuable tool to the administration of justice because pre-trial disposition of criminal charges "facilitate[s] the essential conservation of limited judicial and prosecutorial resources." *Bowers v. State*, 500 N.E.2d 203, 204 (Ind. 1986). A public perception that prosecutors will renege on plea deals could "impair[] the reliability and usefulness" of plea agreements. *Id.* Similarly, to find that Campbell has the prerogative to purposefully violate a provision of his Plea Agreement "and consequently benefit himself . . . would greatly diminish the usefulness and finality of plea agreements as parties would not be able to rely upon them." *Downs v. State*, 827 N.E.2d 646, 652 (Ind. Ct. App. 2005), *trans. denied*.

Our supreme court has acknowledged the benefits that inure to the public when a prosecutor "withhold[s] prosecution of one individual in exchange for information leading to the arrest and conviction of a person deemed more dangerous to the public welfare." *Bowers*, 500 N.E.2d at 204. Here, Campbell was one of *five* individuals charged in

connection with Sekse's murder. The State promised to dismiss eight of Campbell's charges in exchange for, in part, testimony that would help secure the convictions of his co-defendants. If we were to adopt Campbell's argument that upon the trial court's acceptance of a plea agreement, the State may not withdraw under *any* circumstances and the trial court must proceed directly to sentencing, the floodgates would be thrown wide open for criminal defendants to make duplicitous promises to prosecutors in order to reduce their own penal exposure, knowing that their negotiated sentences would be preserved regardless of their non-compliance. Such a holding would "undermine the integrity and credibility of the criminal justice system." *Id.* Accordingly, even though the trial court had already accepted the Plea Agreement and entered a judgment of conviction, we conclude that Campbell's subsequent breach warranted the State's withdrawal from the Plea Agreement prior to the imposition of any sentence.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion by granting the State's Motion to Withdraw from Plea Agreement, vacating the judgment of conviction, and ordering the case to proceed to trial.

Affirmed.

MATHIAS, J. and CRONE, J. concur