# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 27 2017, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald C. Swanson, Jr.
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Deontray Foster,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 27, 2017

Court of Appeals Case No.
02A05-1609-CR-2232

Appeal from the Allen Superior Court

The Honorable Wendy W. Davis, Judge

Trial Court Cause No.
02D05-1603-F6-284

**Vaidik, Chief Judge.**

# Case Summary

[1] The State presented Deontray Foster with a written plea agreement that it had signed. After Foster signed the agreement but before it was presented to the trial court, the State learned that Foster had failed to appear for his bond-supervision appointments in this case. Accordingly, the State withdrew from the agreement, and Foster pled guilty without the benefit of a plea agreement. Foster now appeals, asking us to re-examine Indiana law regarding the State's authority to withdraw from plea agreements that have been signed by both the State and the defendant. We decline to change well-established Indiana law on this point and therefore affirm.

# Facts and Procedural History

[2] On March 10, 2016, the State charged Foster with the following counts: Count I, Level 6 felony kidnapping; Count II, Level 6 felony criminal confinement; Count III, Class A misdemeanor domestic battery; and Count IV, Class A misdemeanor interference with the reporting of a crime. Foster was conditionally released on a surety bond pending trial.

[3] The State presented Foster with a written plea agreement on June 23, 2016. Ex. A. The plea agreement was signed by the Allen County Prosecutor as well as the deputy prosecutor assigned to the case. According to the terms of the agreement, Foster would plead guilty to Counts II and III and, in exchange, the State would dismiss Counts I and IV. In addition, Foster would receive

consecutive sentences of two years for Count II and one year for Count III, all suspended to probation.

[4] Six days after the plea agreement was presented to Foster, on June 29, Allen Superior Court Pretrial Services filed a notice with the trial court that Foster had failed to appear for two supervision appointments that month. Appellant's App. p. 14; *see also* Sent. Tr. p. 15 (Foster admitting that he did not have any excuses for failing to appear). The court issued a bench warrant for Foster's arrest, and he was arrested and held without bond.

[5] On August 23, 2016, Foster appeared before an Allen Superior Court magistrate for a guilty-plea hearing. Notably, the plea agreement presented to Foster on June 23 was not mentioned during this hearing. *See generally* Guilty Plea Tr. Instead, the trial court confirmed with Foster that he was pleading guilty to Counts II, III, and IV (as opposed to just Counts II and III, as provided for in the June 23 plea agreement) "**without the benefit of a plea agreement**." *Id.* at 6 (emphasis added). The trial court also discussed the sentencing range for each count as well as the fact that it was up to the court to decide whether his sentences would be served concurrently or consecutively and whether any time would be suspended. *Id.* at 8. After confirming with the court that no promises had been made to him to cause him to plead guilty, *id.* at 9, Foster pled guilty to Counts II, III, and IV. The State then moved to dismiss Count I. The court accepted Foster's guilty plea to Counts II, III, and IV, ordered a presentence-investigation report, and set the matter for sentencing before the judge on September 22.

[6]     At the sentencing hearing, the judge confirmed with Foster that he had pled guilty to Counts II, III, and IV. Defense counsel recommended a two-year sentence, all suspended to probation. In contrast, the deputy prosecutor recommended an executed sentence of three years based on Foster's criminal history and failure to report to pretrial services while on bond in this case. In response to the deputy prosecutor's recommendation, defense counsel offered into evidence the June 23 plea agreement, which was signed by Foster on August 23 and file-stamped that same day as well—the very day that he pled guilty to Counts II, III, and IV "**without the benefit of a plea agreement**." The deputy prosecutor objected, claiming that the plea agreement had expired before Foster signed it and in any event was no longer "on the table" because Foster had failed to report to pretrial services in this case, requiring a warrant for his arrest. Sent. Tr. p. 13. Defense counsel conceded that the June 23 plea agreement "did not proceed" and confirmed that he was "not contesting the guilty plea"[1] but explained to the judge what had happened:

> What occurred is we had kind of a sit down with this plea, and then the Deputy Prosecuting Attorney screwed with the Court, grabbed the plea out of the Magistrate Judge's hands and ripped it up here. So we proceeded on the basis of a straight up plea so that we could contest this fabulous sentencing.

---

[1] According to Indiana Code section 35-35-1-4(b), the trial court, before sentencing, may allow a defendant to withdraw his guilty plea "for any fair and just reason."

*Id.* at 6, 12. On appeal, Foster claims that this event occurred at the August 23 guilty-plea hearing, *see* Appellant's Br. p. 8, but it is not reflected in the transcript of that hearing. In any event, the deputy prosecutor admitted that she ripped up the plea agreement because of its expiration as well as "the intervening act" of Foster failing to report to pretrial services in this case. Sent. Tr. p. 13 ("He has shown he's not appropriate for Court supervision by his actions after this plea was tendered, and because it was ripped up, that means it was no longer a binding contract at all and not for the Court's consideration."). Defense counsel maintained that it was "relevant to the Court's consideration as to what sentence should be given in this case" because it showed that the State thought a three-year suspended sentence was appropriate. *Id.* at 12.

[7] The trial court admitted the plea agreement into evidence. However, the court sentenced Foster to two-and-a-half years, all executed. The court identified as a mitigator that Foster had taken responsibility and pled guilty. As aggravators, the court identified Foster's criminal history (nine juvenile adjudications, six misdemeanors, and three felonies), his prior conviction for criminal confinement (the same conviction as one of the convictions in this case), his prior conviction for an unauthorized absence from home detention (which showed his failure at community supervision), and his failure to report to pretrial services while on bond in this case.

[8] Foster now appeals.

# Discussion and Decision

[9] Foster contends that "the trial court erred in entering a sentence wildly in excess of [the June 23 plea] agreement." Appellant's Br. p. 11. Under current Indiana law, he concedes that the trial court "was under no duty or compulsion to sentence [him] pursuant to the terms of the" June 23 plea agreement; however, he claims that "it is time for this Court to re-examine" Indiana law concerning the State's authority to withdraw from plea agreements that have been signed by both the State and the defendant. *Id.* We decline to change well-established Indiana law on this point.

[10] Our plea-bargaining process is controlled largely by statute. *Badger v. State*, 637 N.E.2d 800, 802 (Ind. 1994); *see also* Ind. Code ch. 35-35-3; Ind. Code §§ 35-31.5-2-236, -272. As recognized by our Supreme Court, the statutory framework provides, directly or implicitly, for five stages to the plea-bargaining process: (1) the State and the defendant reach an agreement concerning the disposition of felony or misdemeanor charges; (2) the State presents the agreement to the trial court along with any recommendation; (3) the court decides whether to accept or reject the agreement as filed (if the court accepts the agreement, it becomes bound by the terms; but if the court rejects the agreement, new agreements may be reached); (4) the actual entry of the guilty plea; and (5) sentencing. *Badger*, 637 N.E.2d at 802-03.

[11] Here, this case never reached Step 2. Even though Foster signed the plea agreement on August 23 and had it file-stamped that same day, the agreement

was not presented on the record to the court for consideration. Instead, Foster voluntarily pled guilty **"without the benefit of a plea agreement."**

[12] But even if the State had presented the June 23 plea agreement to the trial court for consideration, the State has the freedom to withdraw from a plea agreement before it is accepted by the court.[2] *Mendoza v. State*, 869 N.E.2d 546, 552 (Ind. Ct. App. 2007), *trans. denied*; *see also Campbell v. State*, 17 N.E.3d 1021 (Ind. Ct. App. 2014) (holding that the trial court properly allowed the State to withdraw from a plea agreement even **after** the court had accepted it based on the defendant's breach of the agreement's express terms). In other words, offer and acceptance of an agreement by the parties does not compel acceptance of the agreement by the court; otherwise, there would be no need for Step 3, where the court chooses to accept or reject the agreement. *Badger,* 637 N.E.2d at 803; *Coker v. State*, 499 N.E.2d 1135, 1138 (Ind. 1986) (explaining that even the immediate acceptance of an offer by the defendant does not create a right to have that agreement specifically enforced), *reh'g denied*; *see also* Ind. Code § 35-35-3-3 (explaining the trial court's choice to accept or reject a plea agreement and the effect of each choice).

[13] Accordingly, it is well-established law in this state that a plea agreement only becomes binding when it is accepted by the trial court. I.C. § 35-35-3-3(e) ("If

---

[2] The only exception is when the State has materially benefitted from the terms of the agreement or the defendant has relied on terms of the agreement to his substantial detriment, both of which Foster concedes do not apply here. Appellant's Br. p. 11.

the court accepts a plea agreement, it shall be bound by its terms."); *Badger*, 637 N.E.2d at 803. And this rule makes perfect sense in cases like these, where there are circumstances that occur or come to light after a plea agreement is signed by both parties but before it is presented to the court for acceptance or rejection. *See Stone v. State*, 27 N.E.3d 341, 343 (Ind. Ct. App. 2015) (noting that the court is free to reject a plea agreement if the defendant engages in misconduct before the guilty-plea hearing). Here, after presenting Foster with the plea agreement, the State found out that he had missed two pretrial services appointments that month. Based on this, the State understandably was unwilling to recommend a sentence of probation to a defendant who could not obey the terms of his conditional release in that very case. The State acted within its authority when it withdrew from the June 23 plea agreement; therefore, Foster was not entitled to have the court consider the agreement for either acceptance or rejection or to be sentenced in accordance with it.[3]

Affirmed.

Bradford, J., and Brown, J., concur.

---

[3] In the alternative, Foster asks us to use our inherent power to revise to his sentence to "two and one half years (2 ½), all suspended, with three (3) years" of probation. Appellant's Br. p. 18. Given Foster's criminal history and failure to report to pretrial services while on bond in this case, we find that Foster's two-and-a-half-year executed sentence for two Class A misdemeanors and one Level 6 felony is not inappropriate.