## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 27 2019, 10:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Mark K. Leeman
Lindsay Ruby
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeremy Colon-Nieves, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 27, 2019 <br><br> Court of Appeals Case No. <br> 18A-CR-2560 <br><br> Appeal from the Cass Superior Court <br><br> The Honorable Richard A. Maughmer, Judge <br><br> Trial Court Cause No. <br> 09D02-1708-F4-24 |

**Mathias, Judge.**

[1] Jeremy Colon-Nieves ("Colon-Nieves") was convicted in Cass Superior Court of Level 4 felony burglary and Level 6 felony resisting law enforcement. He

raises two issues, which we restate as 1) whether the trial court abused its discretion when it allowed the State to withdraw from the plea agreement, and 2) whether sufficient evidence supports Colon-Nieves's burglary conviction.

[2]     We affirm.

## Facts and Procedural History

[3]     On August 3, 2017, at approximately 6:00 a.m., Ed Zimmerman noticed a vehicle blocking the driveway of his home in Logansport, Indiana. Shortly thereafter, he saw a man run from a nearby field and enter the passenger side of the vehicle. Because he was suspicious of the man's behavior, Zimmerman called 911.

[4]     Logansport Police Officer Jason Rozzi ("Officer Rozzi") responded to the 911 call and observed the vehicle backing down Zimmerman's dead-end street. Officer Rozzi activated his emergency lights and approached Colon-Nieves, the driver of the vehicle. Colon-Nieves was "sweaty, nervous, [and] out of breath." Tr. p. 106. Officer Rozzi instructed Colon-Nieves to turn off the vehicle, and he initially complied. However, when Officer Rozzi attempted to look at the license plate, Colon-Nieves restarted the car, "floored it," and "drove through the yard" around the officer. Tr. pp. 106, 111.

[5]     A chase ensued, with multiple officers following Colon-Nieves through Logansport at extreme speeds. The vehicle chase ended when Colon-Nieves crashed the vehicle into a curb in a restaurant parking lot. Colon-Nieves and his passenger, Raul Serrano ("Serrano"), jumped out of the vehicle and fled on foot

in opposite directions. Colon-Nieves and Serrano were eventually apprehended and arrested.

[6] Colon-Nieves's vehicle was searched pursuant to a warrant. There were several items in the vehicle, including a microwave and two tables. The items had grass on them suggesting that they had lain outside. On the date of the August 3, 2017 search, none of the items had been reported stolen. Therefore, the vehicle and its contents were eventually returned to Colon-Nieves.

[7] That same day, police officers also returned to the field near Zimmerman's residence. One officer discovered multiple sets of footprints in the dewy grass leading from the field to a wooded area adjoining the Highpoint Apartment complex. Tr. pp. 124, 127–28. Two days later, on August 5, 2017, Adriana Jose ("Jose") returned to her apartment in the Highpoint complex after a weeklong vacation. The door to the apartment had been kicked in and the apartment was a "disaster." Tr. p. 146. Several items were missing including tables, a microwave, a gaming system, televisions, laptops, clothing and jewelry. The police showed Jose photographs of the items found in Colon-Nieves's vehicle, and she informed them that the tables and microwave belonged to her. Jose was also familiar with Colon-Nieves, who had been in her apartment on multiple occasions as a guest of her boyfriend, Christian Talamantes.

[8] On August 5, 2017, Colon-Nieves was charged with Level 6 felony resisting law enforcement, and on August 28, 2017, in a separate cause, Colon-Nieves was charged with Level 4 felony burglary. On May 8, 2018, Colon-Nieves agreed to

plead guilty to both charges. He also agreed to plead guilty to an unrelated pending misdemeanor battery charge. The plea agreement provided that Colon-Nieves would be sentenced to eight years for burglary, with concurrent one-year sentences for resisting law enforcement and battery. The parties also agreed that Colon-Nieves could serve three years of his sentence in Community Corrections and two years would be suspended to probation. After a factual basis was established at the guilty plea hearing, the trial court took the plea agreement under advisement and ordered Colon-Nieves to report to probation for preparation of a pre-sentence investigation report and a possible urine screen.

[9] The parties appeared for sentencing on June 5, 2018. When asked, Colon-Nieves admitted that he would not be able to pass a drug screen. For this reason, the State asked to withdraw from the plea agreement. The trial court agreed, withdrew the plea agreement, and ordered Colon-Nieves to submit to a drug screen. At a pre-trial hearing held on July 30, 2018, the trial court specifically rejected the plea agreement tendered to the court on May 8, 2018. Tr. p. 60.

[10] A jury trial commenced on August 15, 2018, and the burglary and resisting law enforcement charges were consolidated for trial. Colon-Nieves was tried jointly with Serrano, and Colon-Nieves was found guilty of both charges. On September 17, 2018, the trial court ordered him to serve an aggregate term of seven years in the Department of Correction. Colon-Nieves now appeals.

# The Plea Agreement

[11] Colon-Nieves argues that the trial court abused its discretion when it allowed the State to withdraw from the plea agreement after Colon-Nieves admitted that he would not be able to pass a drug screen. Acceptance or rejection of a proffered plea agreement is within the discretion of the trial court. *Campbell v. State*, 17 N.E.3d 1021, 1023 (Ind. Ct. App. 2014). "If the court accepts a plea agreement, it shall be bound by its terms." Ind. Code § 35-35-3-3(e).

[12] First, Colon-Nieves claims that the trial court accepted the plea agreement before the State asked to withdraw from it. The binding nature of a court-accepted plea agreement prevents trial courts from revoking such agreements and vacating previously entered judgments of conviction—even if the defendant has not yet been sentenced. *See, e.g., Reffett v. State*, 571 N.E.2d 1227, 1229–30 (Ind. 1991); *Kline v. State*, 875 N.E.2d 435, 437 (Ind. Ct. App. 2007).

[13] On May 8, 2018, the trial court held a hearing at which the State and Colon-Nieves informed the court that Colon-Nieves agreed to plead guilty to the Level 4 felony burglary charge and the Level 6 felony resisting law enforcement charge. He also agreed to plead guilty to the unrelated Class A misdemeanor battery charge. The parties agreed that Colon-Nieves would serve an aggregate sentence of eight years, with three years served in Community Corrections, if Colon-Nieves was qualified and accepted, and two years suspended to probation.

[14] The trial court instructed Colon-Nieves that after a factual basis for the plea was established, it would order a pre-sentence investigation report from the probation department "and then decide whether or not to accept the Plea Agreement after reading the Report and hearing evidence at the Sentencing Hearing." Tr. p. 37. The court further explained that if it accepted the plea agreement, the court was bound by it, but if the court rejected the plea agreement, then Colon-Nieves was not bound by it. Tr. p. 37. Colon-Nieves then pleaded guilty to the three charges, and a factual basis for each charge was established. Tr. pp. 39–45. The trial court determined that Colon-Nieves's guilty plea was "freely and voluntarily made." Tr. p. 50. The court ordered a pre-sentence investigation report and set the matter for sentencing on June 5, 2018. The trial court's chronological case summary also states that Colon-Nieves's guilty plea was "taken under advisement" on May 8, 2018.

[15] On that date, Colon-Nieves appeared for sentencing, and the court asked him if he could "pass a drug screen today."[1] Tr. p. 54. Colon-Nieves replied that he could not. Therefore, the court ordered him remanded into the custody of the

---

[1] Colon-Nieves argues that the trial court ordered him to submit to drug screens, which indicates that the court had accepted the plea agreement. The record does not support his argument. At the guilty plea hearing, the court ordered Colon-Nieves to report to probation for the purpose of preparing the pre-sentence investigation report. The court simply stated to Colon-Nieves that the probation department would "probably take a urine screen from you." Tr. p. 51. At the sentencing hearing, before the plea agreement was withdrawn, Colon-Nieves was asked if he could pass a drug screen. He was not ordered to submit to one until after he admitted that he could not pass the screen.

Cass County Sheriff and stated he would be brought back into court when he could pass a drug screen. *Id.*

[16] The State then asked to withdraw from the plea agreement and for the trial court to reject it. The court allowed the State to withdraw from the plea agreement and set a jury trial date for the burglary and resisting charges. At the final pre-trial hearing, at the State's request, the trial court specifically rejected the plea agreement that was tendered to the court on May 8, 2018.

[17] Importantly, the trial court never accepted the plea agreement at issue in this appeal. And the State is free to withdraw from a plea agreement before it is accepted by the trial court. *Mendoza v. State*, 869 N.E.2d 546, 552 (Ind. Ct. App. 2007), *trans. denied*.

[18] The only exceptions to the State's freedom to withdraw from a plea agreement before the trial court accepts it "occur[] if the State has materially benefited from the terms of the agreement or the defendant has relied on the terms of the agreement to his substantial detriment." *Id.* (citation omitted). Colon-Nieves claims both that the State materially benefited from the plea agreement and that he relied on it to his substantial detriment.

[19] First, he argues that the State "had the opportunity to use" the statements Colon-Nieves made during the plea colloquy at Serrano's first trial, which was held three weeks after Colon-Nieves's guilty plea hearing. Appellant's Br. at 20. Serrano's first trial resulted in a mistrial on the burglary charge. After the State withdrew from the plea agreement in this case, Colon-Nieves and Serrano were

tried together on the burglary charge. Therefore, Colon-Nieves claims that "[b]y entering into and subsequently reneging on a plea agreement with Colon-Nieves the State obtained valuable information that could be used in Serrano's trial . . . and then got an opportunity to retry the defendants together." *Id.* at 20–21.

[20] Colon-Nieves's claim that the State materially benefitted from his plea is mere speculation. There is no evidence that the State used or benefited from the statements made at the plea hearing in Serrano's first trial.[2]

[21] Colon-Nieves also argues that he relied on the terms of the plea agreement to his substantial detriment because he submitted to drug screens pursuant to the terms of the agreement. After the plea hearing, the trial court informed Colon-Nieves that the probation department would likely require him to submit to a urine screen during preparation of the pre-sentencing investigation report.[3] Colon-Nieves would have had to submit to drug screens regardless of whether his conviction and sentence were the result of a plea agreement or trial. Therefore, we are not persuaded by his claim that he relied on the terms of the plea agreement to his substantial detriment.

---

[2] The statements Colon-Nieves specifically references in his brief established his connection to Jose, her boyfriend and his familiarity with their apartment. Jose's testimony at trial established nearly the same facts.

[3] The record does not establish whether Colon-Nieves submitted to a drug screen after the guilty plea hearing.

[22] For all of these reasons we conclude that because the trial court never accepted the plea agreement, the State was free to withdraw from the agreement when Colon-Nieves informed the court that he would not be able to pass a drug screen.

## Sufficient Evidence

[23] Colon-Nieves argues that the evidence is insufficient to support his burglary conviction. Our standard of review is well settled.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction.... Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind. 2007) (citations, internal quotations, and emphasis omitted).

[24] Colon-Nieves argues that the State only proved that he possessed stolen property but failed to prove that he broke and entered Jose's apartment with intent to commit theft. To convict Colon-Nieves of burglary, the State was required to prove that he broke and entered the apartment with the intent to commit theft therein. *See* Ind. Code § 35-43-2-1(1); Appellant's App. p. 13. And

a person commits theft when he knowingly or intentionally exerts unauthorized control over the property of another person, with intent to deprive the other person of any part of its value or use. *See* Ind. Code § 35-43-4-2.

[25] "A conviction may be based on circumstantial evidence alone so long as there are reasonable inferences enabling the factfinder to find the defendant guilty beyond a reasonable doubt." *Lawrence v. State*, 959 N.E.2d 385, 388 (Ind. Ct. App. 2012) (citation omitted), *trans. denied*. Moreover,

> the mere unexplained possession of recently stolen property standing alone does not automatically support a conviction for theft[,] ... such possession is to be considered along with the other evidence in a case, such as how recent or distant in time was the possession from the moment the item was stolen, and what are the circumstances of the possession (say, possessing right next door as opposed to many miles away).

*Fortson v. State*, 919 N.E.2d 1136, 1143 (Ind. 2010).

[26] The State presented evidence that on some date between July 30 and August 5, 2017, a person forcibly entered Jose's apartment by kicking in the door, and that person stole several items belonging to Jose. At 6:00 a.m. on August 3, 2017, Colon-Nieves was in possession of Jose's stolen tables and microwave. Jose parked his vehicle at the end of a quiet dead-end street adjacent to a field which adjoins Jose's apartment complex. Jose can see the field from her apartment. A police officer observed multiple sets of footprints in the field's dewy grass leading from an area near Jose's apartment. The microwave and

tables found in Colon-Nieves's vehicle were covered in grass, and a reasonable inference may be made that the items were lying in the grass at some point.

[27] Colon-Nieves had been present in Jose's apartment on multiple occasions as a guest of her boyfriend. When he was approached by Officer Rizzo on August 3, Colon-Nieves was "sweaty, nervous, [and] out of breath." Tr. p. 106. He then fled from the officer, initiating a chase at extreme speeds in Logansport. After he crashed his vehicle, Colon-Nieves continued to flee on foot. *See, e.g.*, *Myers v. State*, 27 N.E.3d 1069, 1077 (Ind. 2015) (noting that evidence of flight and attempts to avoid arrest may be circumstantial evidence "tend[ing] to show guilt").

[28] From this evidence, it was entirely reasonable for the fact-finder to conclude that Colon-Nieves broke and entered Jose's apartment with intent to commit theft therein.

# Conclusion

[29] The trial court did not abuse its discretion when it allowed the State to withdraw from the plea agreement. In addition, Colon-Nieves's burglary conviction is supported by sufficient evidence. For all of these reasons, we affirm Colon-Nieves's convictions for burglary and resisting law enforcement.

[30] Affirmed.

May, J., and Brown, J., concur.